## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### BROOKLYN

| | |
|---|---|
| MARGOT ZIMMERMAN, individually and on behalf of all others similarly situated, | 1:24-cv-02609 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| BIG HEART PET BRANDS INC., | Jury Trial Demanded |
| Defendant | |

Margot Zimmerman ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1.    A study from the Pew Research Center revealed that about half of U.S. pet owners consider their pets as much a part of their family as a human member.

2.    This devotion to animal companions is reflected in surveys showing that "Americans spend more on their pets than the citizens of any other country in the world," exceeding one hundred billion dollars annually by some estimates.[1]

3.    This "humanization of our pets" is accompanied by the "premiumization of pet food," which accounts for half of overall pet spending.

4.    One pet industry executive noted that "As pet parents become more aware of what they are putting into their own bodies, it's spilling over to all members

---

[1] https://finmasters.com/pet-spending-statistics

of the family, including their pets."

5.     The result is seeking pet foods "with simple ingredients that they know and trust."

6.     To appeal to the growing number of pet owners seeking pet foods "with simple ingredients that they know and trust," Big Heart Pet Brands Inc. sells Pup-Peroni brand dog snacks which emphasize that "Real Beef [is its] #1 Ingredient" ("Product") in a stamp-type box, beneath two pieces of freshly grilled beef, having an "Original Beef Flavor" and "No Red 40 Fillers."



7.     That the Product's most predominant ingredient is "beef" is confirmed

by the ingredient list on the back of the package.



8.    However, promoting "Real Beef [as the] #1 Ingredient" is false and misleading.

9.    Consumers understand "beef" to refer to a type of meat, "capable of use as human food which is made wholly or in part from any meat or other portion of the carcass of [] cattle." 21 U.S.C. § 601(j).[2]

10.   The public expects beef is subjected to inspections to ensure quality attributes, such as (1) sourcing only from healthy animals, (2) limited use of

---

[2] Federal Meat Inspection Act ("FMIA"), 21 U.S.C. § 301 *et seq*. and 21 U.S.C. § 601 *et seq*.

additives, and (3) careful review of processing methods.

11.    However, in the context of food for animals, "beef" has a different meaning than the "Real Beef" purchasers would expect.

12.    This is because definitions for pet food ingredients are defined by Article 8, Manufacture and Distribution of Commercial Feed, of the New York Agriculture and Markets Law ("AGM") and the Association of American Feed Control Officials Inc. ("AAFCO"). AGM §§ 128 *et seq*.; *see also* 1 N.Y.C.R.R. § 257.1 ("Definitions and terms; exemptions").[3]

13.    These common or usual names are required to be consistent with 21 U.S.C. § 343(i), as the Federal Food, Drug, and Cosmetic Act ("FFDCA") applies to the labeling of pet food. 21 U.S.C. § 301 *et seq*.[4]

14.    New York has adopted the AAFCO definition of "meat" as "The clean flesh derived from slaughtered mammals…[that is] suitable for animal feed."

15.    When from a bovine source, the appropriate term is "beef."

16.    Moreover, "feed grade" is defined as "Material that has been determined to be safe, functional, and suitable for its intended use in animal food."

---

[3] See New York Codes, Rules, and Regulations or N.Y.C.R.R., Title 1, Department of Agriculture and Markets, Chapter VI – Food Control, Subchapter C – Food and Food Products (Article 17 Agriculture and Markets Law), Part 257, Manufacture and Distribution of Commercial Feed.
[4] Compliance Policy Guide ("CPG") Sec. 665.100, Common or Usual Names for Animal Feed Ingredients.

17.   While the purpose of an ingredient having a "common or usual name" is to distinguish it from other ingredients, New York prohibits "[any] reference to quality or grade of any ingredient [from] appear[ing] in the ingredient statement of any feed." 1 N.Y.C.R.R. § 257.5(c).

18.   The Product is "misbranded" because describing its predominant ingredient as "Real Beef" "is false or misleading," because it is not "real beef" as understood by consumers, but feed grade beef.[5] AGM § 131(1).

19.   While the ingredient list is required to list "beef," the front label is not required to promote the presence of "Real Beef," contrary to the prohibition against highlighting ingredients by quality or grade.

20.   For feed grade beef, the quality of starting material is lower than for human grade beef.

21.   This means the application of intense processing methods such as rendering and extrusion.

22.   Extrusion refers to cooking ingredients together under pressure and heat, a process unfamiliar to consumers of "real beef."

23.   The result is a (1) deterioration of nutritional integrity, through loss of vitamins and minerals, and protein denaturation, and (2) the potential development of harmful substances like acrylamide.

---

[5] "Misbranded" is the statutory term for labeling that is false and/or misleading.

24.   As a result of the false and misleading representations, the Product is sold at a premium price, approximately $3.29 for 2.5 oz (71g), with higher or lower prices based on the size of the packaging, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## JURISDICTION

25.   Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

26.   The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

27.   Plaintiff is a citizen of New York.

28.   Defendant is a citizen of Delaware based on its corporate formation.

29.   Defendant is a citizen of Ohio based on its principal place of business.

30.   The Court has jurisdiction over Defendant because it transacts business within New York and sells the Product to consumers within New York from retail stores such as grocery stores, pet food stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, to citizens of this State.

31.   Defendant transacts business in New York, through the sale of the

Product to citizens of New York from retail stores such as grocery stores, pet food stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, to citizens of this State.

32.   Defendant has committed tortious acts within this State through the distribution and sale of the Product, which is misleading to consumers in this State.

33.   Defendant has committed tortious acts outside this State by labeling, representing and selling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, type, origins, amount and/or quality, by regularly doing or soliciting business, or engaging in other persistent courses of conduct to sell the Product to consumers in this State, and/or derives substantial revenue from the sale of the Product in this State.

34.   Defendant has committed tortious acts outside this State by labeling the Product in a manner which causes injury to consumers within this State by misleading them as to its contents, type, origins, amount and/or quality, through causing the Product to be distributed throughout this State, such that it expects or should reasonably expect such acts to have consequences in this State and derives substantial revenue from interstate or international commerce.

**VENUE**

35.   Plaintiff resides in Queens County.

7

36.   Venue is in this Court, in the Brooklyn Division of this District, because a substantial or entire part of the events or omissions giving rise to Plaintiff's claims occurred in Queens County.

37.   Venue is in this Court, in the Brooklyn Division of this District, because Plaintiff's residence is in Queens County.

38.   Plaintiff purchased, used, provided for consumption, and/or consumed the Product in reliance on the packaging, labeling, representations, and omissions identified here in Queens County.

39.   Plaintiff first became aware the packaging, labeling, representations, and omissions were false and misleading in Queens County.

## PARTIES

40.   Plaintiff Margot Zimmerman is a citizen of Queens County, New York.

41.   Defendant Big Heart Pet Brands Inc. is a Delaware corporation with a principal place of business in Ohio.

42.   Defendant is one of the nation's largest sellers of pet foods.

43.   Plaintiff is like most consumers who values relationships with her pets.

44.   Plaintiff like many Americans who tries to get her pets foods with simple ingredients she is familiar with.

45.   Plaintiff is like most consumers who are unaware that the "real beef" promoted in the Product is different in quality and type to what she understands as

"real beef."

46. Plaintiff is like most consumers who are unaware that the beef used in the Product is feed grade beef, of lower quality and type than the type of beef she would purchase or consume for herself.

47. Plaintiff is like most consumers who are unaware that feed grade beef differs from "real beef" in nutritional quality, due to the processing methods needed to render it consumable by animals.

48. Plaintiff is like most consumers and looks to the front label of pet foods to see what they are buying and to learn basic information about them.

49. Plaintiff is like most consumers and is accustomed to the front label of packaging telling them essential information, features, and/or attributes, of what they are buying.

50. Plaintiff is like most consumers and when she sees a front label which promotes "real beef," they expect this to refer to the type of beef they would buy and/or consume, such as quality attributes, including (1) sourcing only from healthy animals, (2) limited use of additives, and (3) careful review of processing methods.

51. Plaintiff read, saw, and relied on the packaging and labeling of "Real Beef #1 Ingredient" in a stamp-type box, beneath two pieces of freshly grilled beef, "Original Beef Flavor," and "No Red 40 Fillers."

52. Plaintiff expected the "real beef" would be the type of beef she would

buy or consume for herself, and not feed grade beef, not appropriate nor permitted for human consumption.

53.   Plaintiff did not expect that instead of "real beef," the Product contained feed grade beef, of lower quality and value, not appropriate nor permitted for human consumption, and not subject to the same quality assurances with respect to beef she would buy or consume for herself.

54.   Plaintiff bought the Product with the labeling, packaging, representations, and/or omissions identified here, "Real Beef #1 Ingredient" in a stamp-type box, beneath two pieces of freshly grilled beef, "Original Beef Flavor," and "No Red 40 Fillers," at around the above-referenced price.

55.   Plaintiff purchased the Product between March 2021 and March 2024, at grocery stores, pet food stores, big box stores, bodegas, gas stations, warehouse club stores, drug stores, convenience stores, specialty grocery stores, ethnic food stores, gas station convenience stores, other similar locations, and/or online, in New York.

56.   Plaintiff paid more for the Product than she would have had she known it did not contain "real beef," as she understood this term, to describe beef of the type she would buy or consume for herself, with quality attributes, including (1) sourcing only from healthy animals, (2) limited use of additives, and (3) careful review of processing methods, and not lower quality feed grade beef, not appropriate nor permitted for human consumption, nor subject to any of the quality assurances

of "real beef," as she would not have bought it or would have paid less.

57.   The Product was worth less than what Plaintiff paid, and she would not have paid as much absent Defendant's false and misleading statements and omissions.

58.   Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

## CLASS ALLEGATIONS

59.   Plaintiff seeks to represent the following class:

> All persons in New York who purchased the Product in New York during the statutes of limitations for each cause of action alleged.

60.   Excluded from the Class are (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediate family members of any of the foregoing persons, (b) governmental entities, (c) the Court, the Court's immediate family, and Court staff and (d) any person that timely and properly excludes himself or herself from the Class.

61.   Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

62.   Plaintiff's claims and basis for relief are typical to other members

because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

63.   Plaintiff is an adequate representative because her interests do not conflict with other members.

64.   No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

65.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

66.   The class is sufficiently numerous, with over 100 members, because the Product has been sold throughout the State for several years with the representations, omissions, packaging, and labeling identified here, at hundreds of retail locations and online to citizens of this State.

67.   Plaintiff's Counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

**CAUSES OF ACTION**

**COUNT I**
New York General Business Law ("GBL") §§ 349 and 350

68.   Plaintiff incorporates by reference paragraphs 1-24.[6]

69.   The purpose of the GBL is to protect consumers against unfair and

---

[6] To the extent any incorporation by reference is required.

deceptive practices.

70.   This includes making state consumer protection and enforcement consistent with established policies of federal law relating to consumer protection.

71.   The GBL considers false advertising, unfair acts, and deceptive practices in the conduct of any trade or commerce to be unlawful.

72.   Violations of the GBL can be based on other laws and standards related to consumer deception.

73.   Violations of the GBL can be based on the principles of the Federal Trade Commission Act ("FTC Act") and FTC decisions with respect to those principles. 15 U.S.C. § 45 *et seq*.

74.   A GBL violation can occur whenever any rules promulgated pursuant to the FTC Act, 15 U.S.C. § 41 *et seq*., are violated.

75.   A GBL violation can occur whenever the standards of unfairness and deception set forth and interpreted by the FTC or the federal courts relating to the FTC Act are violated.

76.   A GBL violation can occur whenever any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices is violated.

77.   In considering whether advertising is misleading in a material respect, the FTC Act recognizes that the effect of advertising includes not just representations

made or suggested by words and images, "but also the extent to which [it] fails to reveal facts material in the light of such representations." 15 U.S.C. § 55(a)(1).

78.   In considering whether a label is misleading, it is required to consider not only representations made or suggested by statements, images, and/or design, but also the extent to which such labeling or advertisement fails to prominently and conspicuously reveal facts relative to the proportions or absence of certain ingredients or other facts concerning ingredients or attributes of a food, which are of material interest to consumers.

79.   Defendant's false and deceptive representations and omissions with respect to the Product's contents, origins, type, and/or quality, that it contained "real beef," as she understood this term, to describe beef of the type she would buy or consume, even though it contained lower quality feed grade beef, not appropriate nor permitted for human consumption, are material in that they are likely to influence consumer purchasing decisions.

80.   This is because consumers (1) value the relationship with their pets, (2) try to get their pets foods with simple ingredients they are familiar with, (3) expect "real beef" to be similar in quality and/or type to the beef they can buy or consume for themselves, and (4) are unaware that the beef used in pet foods is feed grade beef, of lower quality and value than the promoted "real beef," not appropriate nor permitted for human consumption.

81.   The replacement of "real beef" with feed grade beef  is of material interest to consumers, because they (1) value the relationship with their pets, (2) try to get their pets foods with simple ingredients they are familiar with, (3) expect "real beef" to be similar in quality and/or type to the beef they can buy or consume for themselves, (4) are unaware that the beef used in pet foods is feed grade beef, of lower quality and value than the promoted "real beef," not appropriate nor permitted for human consumption, and (5) "real beef" costs more than feed grade beef.

82.   The labeling of the Product violated the FTC Act and thereby violated the GBL because the representations, omissions, packaging, and labeling, "Real Beef #1 Ingredient" in a stamp-type box, beneath two pieces of freshly grilled beef, "Original Beef Flavor" and "No Red 40 Fillers," created the erroneous impression it contained beef of the type consumers could buy or consume for themselves, when this was false, because it contained feed grade beef, of lower quality and value, and was not appropriate nor permitted for human consumption.

83.   The labeling of the Product violates laws, statutes, rules and regulations which proscribe unfair, deceptive, or unconscionable acts or practices, thereby violating the GBL.

84.   Violations of the GBL can be based on public policy, established through statutes, law, or regulations.

85.   The labeling of the Product violates laws, statutes, rules and regulations

that are intended to protect the public.

86.   The labeling of the Product violated the GBL because the representations, omissions, labeling, and packaging, "Real Beef #1 Ingredient" in a stamp-type box, beneath two pieces of freshly grilled beef, "Original Beef Flavor" and "No Red 40 Fillers," when it did not contain "Real Beef" as understood by consumers, because it contained feed grade beef, of lower quality and value, and was not appropriate nor permitted for human consumption, was unfair and deceptive to consumers.

87.   The labeling of the Product violated the GBL because the representations, omissions, packaging, and labeling of "Real Beef #1 Ingredient" in a stamp-type box, beneath two pieces of freshly grilled beef, "Original Beef Flavor" and "No Red 40 Fillers," when "Real Beef" was false, because it did not contain "real beef" as this term is understood by consumers, but contained feed grade beef, of lower quality and value, which was not appropriate nor permitted for human consumption, was contrary to the AGM, which adopted the relevant AAFCO requirements, and was based generally on the FFDCA.

88.   The AGM prohibits consumer deception by companies in the labeling of pet food.

<u>State</u>

AGM § 131(1)

89.   Plaintiff believed "real beef" meant the type of beef capable of use as human food, subjected to inspections to ensure quality attributes, with respect to (1) sourcing only from healthy animals, (2) limited use of additives, and (3) careful review of processing methods, even though it did not contain "real beef" as she understood this term, because it contained feed grade beef, of lower quality and value, not appropriate nor permitted for human consumption.

90.   Plaintiff paid more for the Product and would not have paid as much if she knew it did not contain "real beef," of the type and quality capable of use as human food, subjected to inspections to ensure quality attributes, with respect to (1) sourcing only from healthy animals, (2) limited use of additives, and (3) careful review of processing methods, because it contained feed grade beef, of lower quality and value, not appropriate nor permitted for human consumption.

91.   Plaintiff seeks to recover for economic injury and/or loss she sustained based on the misleading labeling and packaging of the Product, a deceptive practice under the GBL.

92.   Plaintiff will produce evidence showing how she and consumers paid more than they would have paid for the Product, relying on Defendant's representations, omissions, packaging, and labeling, using statistical and economic

17

analyses, hedonic regression, hedonic pricing, conjoint analysis, and other advanced methodologies.

93.   As a result of Defendant's misrepresentations and omissions, Plaintiff was injured and suffered damages by her payment of a price premium for the Product, which is the difference between what she paid based on its labeling, packaging, representations, statements, omissions, and/or marketing, and how much it would have been sold for without the misleading labeling, packaging, representations, statements, omissions, and/or marketing identified here.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as Counsel for the class;

2. Awarding monetary damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   April 7, 2024

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates P.C.
60 Cuttermill Rd Ste 412

18

Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Notice of Lead Counsel Designation:*

*Lead Counsel for Plaintiff*

Spencer Sheehan

Sheehan & Associates P.C.

*Counsel for Plaintiff*

**Certificate of Service**

I certify that on April 7, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan